in which plaintiff was to do his work, counsel for defendant requested the court to charge as follows:

"I also ask your honor to charge the jury that the rule of safe place has no application to this case."

To which the court replied:

"I think that is so, because the accident, if occasioned by the negligence of the defendant, was by the starting of the hoist, which, if properly managed, was safe."

The only remaining theory, then, upon which the cause of action came within the act, was that upon which the jury was charged—that:

"If any of the defendant's employés charged with the duty gave the signal [i. e., to start the elevator] it was the act of superintendence."

To this exception was duly taken. There was no evidence given as to who gave the signal, nor that any one whatever was charged with the duty of giving the signal. In fact, the very absence of such a person so charged with the duty of signaling is one of plaintiff's assignments of negligence on defendant's part. Nor can it be said, under such conditions, that the mere act of giving the signal would constitute an act of superintendence, if given by an employé, when every employé was at liberty to give it, and when it did not come within the assigned duty of a superintendent. In addition to which the notice given under the act made no claim that the accident was due to any default upon the part of any person intrusted with and exercising superintendence.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event.

McLAUGHLIN and LAUGHLIN, JJ., concur. INGRAHAM, P. J., and MILLER, J., dissent.

---

BERANDINO v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department.    February 4, 1910.)

1. APPEAL AND ERROR (§ 927*)—DISMISSAL OF COMPLAINT—WEIGHT OF EVIDENCE.

    On appeal from an order dismissing the complaint at the trial, plaintiff is entitled to the most favorable deductions that can be drawn from the evidence.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3748, 4024;  Dec. Dig. § 927.*]

2. MASTER AND SERVANT (§ 107*)—DUTY TO PROVIDE SAFE PLACE TO WORK—RAILROAD COMPANIES.

    It is the duty of a railroad company to use reasonable care to provide for an employé whose duty it is to clean locomotives a safe place to work.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 212;  Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 141*)—RULES—DUTY TO ESTABLISH AND ENFORCE.

    It is the duty of a railroad company to establish and enforce proper rules for the protection of an employé engaged in cleaning locomotives

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

if necessary, and a failure to establish such rules, or a laxity in their enforcement, is negligence; and in making such rules the company is bound to use ordinary care, and anticipate and guard against such accidents as may reasonably be foreseen by its managers in the exercise of such ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*]

4. MASTER AND SERVANT (§ 286*)—RULES—ESTABLISHMENT AND ENFORCEMENT.

The duty of a master and the degree of care required of him is measured by the law of ordinary diligence, considering the danger to be feared; and whether rules for the protection of an employé should be made and enforced is usually for the jury, and it is only where it is beyond dispute that rules were not necessary, or could not have prevented the accident, that the court may hold as a matter of law that the master was not bound to have made rules; so that whether a railroad company should have adopted rules for the protection of its employés at work in a yard in which a number of the tracks were supplied with rails heavily charged with electricity was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1036–1038; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§ 286*)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

Evidence in an action against a railroad company for the death of an employé, caused by contact with a third rail heavily charged with electricity, *held* sufficient to take the case to the jury on the question of the master's negligence in failing to provide a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1021; Dec. Dig. § 286.*]

Appeal from Trial Term, New York County.

Action by Daniel Berandino against the New York Central & Hudson River Railroad Company. From a judgment dismissing the complaint at the trial, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Richmond J. Reese, for appellant.

Robert A. Kutschbock, for respondent.

SCOTT, J. This is an appeal by plaintiff from a judgment entered upon a dismissal of the complaint at the trial. The action is for damages for the death of plaintiff's intestate, who was a laborer employed in cleaning defendant's locomotives at its yard at Wakefield.

This yard was the connecting point between defendant's electric service and its steam service, where the electric motors used to draw trains in and out of the city of New York are substituted for steam locomotives used on other parts of defendant's line. There are, of course, a number of tracks in the yard, most of which are electrically equipped, although some are without such equipment. The electrical equipment was what is known as the "third rail" system, consisting of a rail charged with electricity, fastened to the ties at the same level as the rails of the track, and distant 18 or 20 inches from one of the traction rails. This "live" rail was covered on the top and on the side furthest from the track by a wooden covering held in place by a series of earthenware clamps. The purpose of this covering was

to protect persons walking in the yard from coming in contact with the "live" rail. There was evidence that the "live" rail was not completely covered at the point where the deceased met his death, and also evidence that there was a hole or depression of some 6 inches under the third rail at that point, which was full of water that had apparently overflowed from a water tank standing opposite.

The deceased, an Italian, who spoke no English and understood but little, was engaged in wiping off and cleaning a steam locomotive which had recently come into the yard. It was standing on an electrified track, taking in water from the tank. The deceased had wiped off the driving wheels, sitting, while doing so, upon the wooden covering of the third rail as upon a bench. He then arose to a standing position, placing his hands while doing so upon the side rod connecting the two driving wheels. He had straightened up into a standing position, when he was instantly killed by a shock of electricity, undoubtedly resulting from a contact between the back of his leg and the third rail. Although it may have been a careless act for the deceased to sit on the wooden covering of the third rail, it seems to be clear that no harm resulted from that act alone. It might, perhaps, be inferred from the evidence that the contact between his leg and the rail took place while he was rising; but the plaintiff, on this appeal, is entitled to the most favorable deductions that can be drawn from the evidence, and there is evidence to support a finding that the deceased had entirely completed the act of rising before he came into contact with the "live" rail.

It was the defendant's duty to use reasonable care to provide the deceased, its servant, with a safe place to work, and, if necessary, to establish and enforce proper rules for his protection while engaged in his work, and a failure to establish such rules, or a laxity in their enforcement, constituted negligence. Morgan v. Hudson River Ore & Iron Co., 133 N. Y. 666, 31 N. E. 234; Wood on Master and Servant, p. 794, § 403. In making rules for the government of its employés, a railroad corporation is bound to use ordinary care, and to anticipate and guard against such accidents and casualties as may be reasonably foreseen by its managers in the exercise of such ordinary care. Berrigan v. N. Y., Lake Erie & W. R. Co., 131 N. Y. 582, 30 N. E. 57. The duty of the master and the degree of care which he is called upon to exercise is measured by the law of ordinary diligence, having regard to the danger to be apprehended, and whether or not the case is one calling for the establishment and enforcement of rules is usually a question for the jury. Devoe v. N. Y. Cent. & Hudson River R. Co., 174 N. Y. 1, 66 N. E. 568.

It is only where it is clear beyond dispute that the situation was not one calling for rules, or one in which no rule could have prevented the accident, that the court is justified in holding as matter of law that the master was under no obligation to have established rules. This, in our opinion, was not such a case. A railroad yard, is, at best, a dangerous place to work in, and the courts have frequently held that a duty rested upon the master to adopt proper rules for the protection of its employés who are required to work therein. In the defendant's Wakefield yard there was added to other sources

of danger the "live" rails carrying charges of electricity sufficient
to produce instant death. The existence of this danger is, of course,
patent, and it would seem that it should not be difficult to establish
rules which would at least minimize the danger to those employed
as the decedent was. At all events, it was a fair question for the
jury, and should have been submitted to them.

So, too, the evidence as to a depression under the third rail sug-
gests a question as to whether the defendant had performed its full
duty of providing a safe place to work. Ordinarily, such a depression
would perhaps be too trivial to notice; but when taken in conjunction
with the "live" rail, and the protrusion of an unguarded part of the
rail, or an iron attachment, it might reasonably be held to assume a
serious aspect. We think that the evidence as it stood warranted a
submission of the case to the jury.

The judgment and order appealed from must therefore be re-
versed, and a new trial granted, with costs to appellant to abide the
event. All concur.