### COLLELLI v. TURNER et al.

(Supreme Court, Appellate Division, Second Department. December 13, 1912.)

1. TRIAL (§ 159*)—DIRECTION OF NONSUIT—WHEN AUTHORIZED.

The court, on a failure of proof on the part of plaintiff, may nonsuit him against his consent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 359-367; Dec. Dig. § 159.*]

2. MASTER AND SERVANT (§§ 206, 217*)—ASSUMPTION OF RISK.

An employé assumes the ordinary and usual risks incident to the employment, and the risks which he knows or may in the exercise of reasonable care know to exist, unless there is an agreement to the contrary.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 550, 574-600; Dec. Dig. §§ 206, 217.*]

3. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK.

Where an employé, operating an embossing machine consisting of horizontal metal plates, so adjusted that their faces could be brought together and separated by machinery by raising and lowering the lower plate, knew that the lower plate would occasionally rise without pressure on the treadle, but said nothing about it, and knew that he had to put his hands between the plates, he assumed, at common law, as a matter of law, the risk of injury caused by such defect, and it was immaterial whether he knew what caused the lower plate to so rise.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574-600; Dec. Dig. § 217.*]

4. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—EMPLOYER'S LIABILITY ACT—NOTICE.

An action under the Employer's Liability Act (Laws 1902, c. 600), for injury to an employé, is not maintainable unless notice is given to the employer as prescribed by the act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

Appeal from Trial Term, Kings County.

Action by Antonio Collelli against Myron D. Turner and others, composing the copartnership of Rutter & Turner. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, BURR, THOMAS, WOODWARD, and RICH, JJ.

Martin T. Manton, of Brooklyn (William H. Griffin, of New York City, on the brief), for appellant.

John C. Robinson, of New York City, for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOODWARD, J. This action was brought to recover damages for the loss by the plaintiff of his left hand, while in the employ of the defendants, and engaged in operating or assisting in operating a machine used by them in embossing or stamping skins or leather. This machine consists in part, it appears, of two horizontal steel or metal plates, one over the other, some three feet square, or nearly so, and so adjusted that their faces or flat surfaces may be brought together and separated by machinery, raising and lowering the under plate. The dies or stamps are in the upper or stationary plate.

The process of stamping, conducted by two persons, is to spread the skin to be stamped on the lower plate and then press a treadle with the foot, whereby a flywheel is put in motion and the lower plate raised until it presses the skin against the stamps or dies in the upper plate, after which it falls back in position, so that the stamped skin may be removed, another put in its place, and the operation repeated. In the course of one of these operations, and when the plaintiff was so removing a stamped skin, "all at once," as he says, "the machine" (lower plate or bed) "came up and took off my hand. The machine" (plate or bed) "was down at the time I was pulling off the skin. It caught the left hand. This hand was inside, and the right hand was outside. It caught my left hand."

It appears by the testimony of the plaintiff and two other witnesses that this lower plate or bed of the machine would occasionally rise without pressure on the treadle; a defect which a witness who had previously worked on the machine had called to the attention of a person whom he styled "my boss" a few days before the accident. In fact, this witness refused to work on the machine any longer, and left the employ of the defendants only a few days before the accident, because his "boss," having promised to fix the machine, failed to do so. Plaintiff began using the machine on the day previous to that of his injury, but with knowledge of this defect. He testified, in part:

"I saw that I had to put my hands in between these two parts of the press to do the work. The moment I started to do this work, I saw that the lower part of the press was likely to jump up at any time, without anybody causing it to jump up, and I started in to work on the press under those conditions, and worked all that first day under those conditions. I came back to work again on it the next morning under those conditions. I say I noticed it coming up again the next day without anybody applying any pressure to the treadle. * * * I continued to work on it the next day under those conditions until I was hurt."

He had already testified that he saw the bed rise once without pressure on the treadle before he began working on the machine, but said nothing about it. The court dismissed the complaint at the close of the testimony for the plaintiff.

[1, 2] It is very clear that a verdict for the plaintiff upon this testimony could not stand, and that the complaint was, therefore, properly dismissed. It is well settled in this state, and has been for more than half a century, says Baylies in his Trial Practice (308), that on a failure of proof on the part of the plaintiff he may be nonsuited against his consent. It is also settled law that, when a person accepts employment, he assumes all the ordinary and usual risks and perils in-

cident thereto, whether the employment be dangerous or otherwise, *and also all risks which he knows, or may, in the exercise of reasonable care, know, to exist,* unless there is an agreement to the contrary. Shaw, as Adm'x, etc., v. Sheldon et al., 103 N. Y. 667, 9 N. E. 183; Davidson v. Cornell et al., 132 N. Y. 228, 30 N. E. 573; Maltbie v. Belden, 167 N. Y. 307, 60 N. E. 645, 54 L. R. A. 52.

[3] This case comes within the scope of the foregoing and many other decisions of the courts of this state, particularly that part of the rule to the effect that an employé assumes the risk of injury from all obvious dangers; and so, if he voluntarily enters into or continues in the service, having knowledge or the means of knowing the dangers involved, he is deemed to assume the risk, and to waive any claim for damages against his employer in case of personal injury. Following are a few of the many decisions in which the rule has been applied:

In Meigel v. Crandall Oil & Putty Mfg. Co., 141 App. Div. 828, 126 N. Y. Supp. 720, the plaintiff, in the employ of the defendant, lost three of his fingers while taking putty from the pan of a putty-mixing machine. The negligence alleged was a defect in a ratchet, by reason of which a lever slipped from its place, reversing the operation of machinery, and causing the accident. The plaintiff had known of this defect for several weeks prior to his injury. The case was twice tried, resulting each time in a verdict for him. Yet this court held that the plaintiff, having accepted employment upon this machine with knowledge of its defects, voluntarily assumed the risks incident thereto, and reversed the judgment upon the second verdict in his favor.

In Reinertsen v. Erie Railroad Co., 142 App. Div. 31, 126 N. Y. Supp. 745, the plaintiff, in the employ of the defendant, nailing planks between the tracks in its terminal yards, was hit, while kneeling at his work, by a passing engine, and seriously injured. The negligence charged was the negligence of the defendant in omitting to furnish a safe place to work by enforcing a rule providing for a signalman to give plaintiff and associate workmen notice of approaching cars. The plaintiff's testimony was to the effect that no such signalman had been provided or acted during his service from April 2d to May 8th, the time of the accident. "I had to rely on my own watchfulness," he testified, "and not on any one who was there to tell me or warn me when those engines were coming." The court held that the plaintiff was not entitled to recover upon the evidence, and reversed a judgment in his favor. "He knew," said the court, "that the place was dangerous," and "that he was not guarded by watchmen. * * * His master, to his own knowledge, had left its obligation unfulfilled and cast upon him the duty of self-preservation, and he was injured by reason of his failure to perform this duty which had fallen to him, and which he had assumed."

In James v. Cranford, 123 App. Div. 558, 108 N. Y. Supp. 142, the plaintiff, employed by the defendant in painting a railroad structure, was injured by a shock as the result of contact between a metal swab which he was using and an electrically charged third rail of the structure. He testified that he knew this rail was in use and "a very dangerous thing" to come in contact with, that he knew the danger of

it from the time he began to work, and that he was likely to get a shock at any time he came in contact with it. The court, having quoted the rules as to the assumption of risk, held that the plaintiff, having knowledge of the danger of coming in contact with the third rail, assumed the risk of injury therefrom, and reversed a judgment in his favor.

In Powers et al., as Admr's, etc., v. N. Y., L. E. & W. R. R. Co., 98 N. Y. 274, plaintiffs' intestate was killed by being thrown from a hand car on its road. One of the handles to the walking beam of the car was broken some weeks before the accident, but defendant's employés continued to use the car by inserting the handle of a pick or an iron crowbar in the place of the broken handle, without any direction from the section boss. On the day of the accident, while the intestate and others were so operating the car, and with great force and pressure to avoid an approaching train, a lever or beam of the car broke, whereby he was thrown under the car and killed. The court, having recited the facts that the intestate, with knowledge of the defect in the hand car, voluntarily continued in the employ of the defendant without complaining or objecting to it, that he must have known that the accident might occur as it did, etc., held that the intestate, by riding on the car and aiding by the use of the crowbar in propelling it, assumed all the risks of injury resulting therefrom or from the negligence of his fellow servants, and this without any regard whatever to the question whether the defendant knew or ought to have known of the defect. Moreover, that the action could not be maintained, for the reason that the deceased was chargeable with contributory negligence in using the car propelled in this manner, that there was no question of fact for the jury upon the trial, and that the motion for nonsuit was properly granted.

In Kaare v. T. S. & I. Co., 139 N. Y. 369, 34 N. E. 901, the plaintiff, in the employ of the defendant, was engaged, in the nighttime, in wheeling a loaded wheelbarrow on a narrow platform, without, as he testified, guards or lights, and with a hole in it, which could not be seen ahead on account of the darkness. When the barrow struck this hole, as he said, it tipped over and threw him from the platform, whereby he was injured. The so-called hole had been there two weeks. Plaintiff had frequently seen it, and several times called the attention of the "head boss," as he called him, to it. Other workmen had also called the attention of the same "boss" to the hole, and he said he would see about it. The court held, as matter of law, that the plaintiff was not entitled to recover, and should have been nonsuited. He had used the platform for two weeks, night and day, in that condition. "If," said the court, "it was dangerous for use on that account, he knew it as well as any one, probably better than any of the defendant's officers. He did not ask that it should be made wider, nor did he complain of the matter of its construction to any one. Knowing exactly the condition of the platform and the risk of its use, and fully able to appreciate that risk, he voluntarily took the risk upon himself and exposed himself to the danger, and he cannot, therefore, maintain his recovery."

In Odell v. N. Y. C. & H. R. R. Co., 120 N. Y. 323, 24 N. E. 478, 17 Am. St. Rep. 650, the plaintiff was injured by the unexpected starting of machinery, while engaged in operating sawing machines for defendant. It was alleged that a defect in a bolt or pin was the cause of the starting of the machinery and consequent injury. The defendant's evidence tended to show that the plaintiff, having full knowledge of the existence of the defect complained of, nevertheless continued to use the machinery until the happening of the accident. Held:

"If such were the fact, defendant is not chargeable with the consequences resulting therefrom."

Counsel requested the trial court to instruct the jury:

"That if the plaintiff knew or had notice that the machine was out of order, and with this knowledge placed his left hand upon the saw, that the placing of his hand upon the saw, with this knowledge and under the circumstances, constitutes contributory negligence, and the plaintiff cannot recover."

The request was denied. But the Court of Appeals said:

"Inasmuch as the court had omitted to instruct the jury upon this subject previous to the making of the request, the refusal to charge as requested was error."

The same rule as to the assumption of the risk of injury from danger of which the employé had knowledge, or might have had it by the exercise of reasonable care, is also applied in Kennedy v. M. R. Co., 145 N. Y. 288, 295, 39 N. E. 956, Drake v. Auburn City Ry. Co., 173 N. Y. 466, 473, 66 N. E. 121, Jackson v. Greene, 201 N. Y. 76, 80, 93 N. E. 1107, and many others which might be cited.

But enough has been said to show clearly, as it seems to us, that the motion for the dismissal of the complaint herein was properly granted. The plaintiff engaged and continued in the use or operation of the press or machine with full knowledge that the lower plate or bed had come up, and, as he further testified, "was likely to jump up at any time" against the upper plate, "without anybody causing it to jump up." He knew, before he began using the machine, that this had occurred, but said nothing about it. It must have been apparent to the plaintiff that injury would result, just as it did, from leaving his hand between the plates when they came together. Nothing could have been, it would seem, more apparent to him, or to any ordinary or casual observer, than this. No expert knowledge, or experience, or familiarity with this or with any machinery, was necessary in order to disclose the danger. Whether the plaintiff knew or might have known what caused the lower plate or bed of the machine to rise, when it should not, is not material; it is enough that he knew it had done so, and was liable to do so again at any time. Yet, having such knowledge, he voluntarily accepted and continued in his employment in the use of the machine in that condition, without complaint, or even saying anything about the defect or his knowledge of it, and therefore assumed the risk of the injury received therefrom. There was no question of fact for the jury to pass upon.

[4] It is claimed for appellant that this question of assumption of risk was a fact for the jury, as provided by section 3 of the Em-

ployer's Liability Act (chapter 600 of the Laws of 1902). But no action for recovery of compensation for injury can be maintained thereunder unless notice is given to the employer in the manner prescribed by the act, which was not done in this case. This statute, while enlarging the employer's common-law liability, imposes a corresponding duty upon the employé to give the former notice of the time, place, and cause of the injury, thus enabling him to look into the cause of injury and adjust or resist the claim therefor, as may seem advisable. Palmieri v. Pearson & Son, Incorporated, 128 App. Div. 231, 112 N. Y. Supp. 684; Foster v. Crooker Co., 142 App. Div. 268, 126 N. Y. Supp. 1020. It would be unjust to hold the employer subject to this enlarged liability without the corresponding benefit of notice provided by the statute imposing the liability.

This is a common-law action, nothing else. The question of the assumption of risk is subject to that law alone (Welch v. Waterbury & Co., 136 App. Div. 315, 120 N. Y. Supp. 1059), and therefore not necessarily one for the jury (Matrusciello v. Milliken Brothers, Incorporated, 141 App. Div. 769, 772, 126 N. Y. Supp. 739).

The judgment should be affirmed, with costs. All concur.